**Lavon WRIGHT et al., Plaintiffs-Appellants,**

v.

**The BOARD OF PUBLIC INSTRUCTION OF ALACHUA COUNTY, FLORIDA, et al., Defendants-Appellees.**

No. 29999
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Aug. 4, 1970.

Rehearing Denied and Rehearing En Banc Denied Sept. 3, 1970.

See also 5 Cir., 425 F.2d 1211.

Harry C. Duncan, Gainesville, Fla., for defendants-appellees.

Before BELL, AINSWORTH, and GODBOLD, Circuit Judges.

BELL, Circuit Judge:

This school case was last before the court in Singleton v. Jackson Municipal Separate School District, 5 Cir., 1969, 419 F.2d 1211 (en banc consideration of Alachua County and 12 additional school cases), modified sub nom. Carter v. West Feliciana Parish School Board, 1969, 396 U.S. 226, 90 S.Ct. 467, 24 L.Ed.2d 382. The questions presented now are in the form of remnants from the effort to convert to a unitary system.[1]

This system consists of 14,722 white and 7,138 Negro students. When suit was commenced in 1964, there were eleven all Negro schools in the system. Four of these, Duval, Williams, A. Quinn Jones Elementary and Lincoln High Schools are situated within the City of Gainesville. This appeal concerns these four schools. All other matters necessary to constitute the system as unitary have been effected. The directions contained in Singleton v. Jackson, supra, in these areas except as to the four schools in question have been implemented. For a statement of the criteria involved in converting from dual to unitary status, see Green v. County School Board of New Kent County, 1968, 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716; Ellis v. The Board of Public Instruction of Orange County, Florida, 5 Cir., 1970, 423 F.2d 203.

Duval and Williams Elementary schools under the assignment plan in effect as of February 24, 1970 remained virtually all Negro from a student

Earl M. Johnson, Jacksonville, Fla., Jack Greenberg, Norman J. Chachkin, Drew S. Days, III, New York City, for plaintiffs-appellants.

1. Under the stringent requirements of Alexander v. Holmes County Board of Education, 396 U.S. 19, 90 S.Ct. 29, 24 L.Ed.2d 19 (1969), which this court has carried out in United States v. Hinds County School Board, 5 Cir., 1969, 417 F.2d 852 (1969), this court has judicially determined that the ordinary procedures for appellate review in school segregation cases have to be suitably adapted to assure that each system, whose case is before us, "begin immediately to operate as unitary school systems." Upon consideration of the record, the court has proceeded to dispose of this case as an extraordinary matter. Rule 2, FRAP.

assignment standpoint. Duval had 539 Negro and 18 white students; Williams had 643 Negro and 56 whites. Appellants contend that it is feasible to pair these schools and that this would result in their substantial desegregation. They point to the fact that pairing was recommended to the district court by the Florida School Desegregaion Consulting Center which organization prepared, at the request of the district court, recommendations for desegregating the schools of the Alachua County system. These recommendations were that Duval be paired with nearby Metcalf (1.4 miles), and that Williams be paired with Prairie View and Lake Forest Elementaries. These latter schools are somewhat further apart. The following would result from the suggested arrangement:

| School | Grades Served | Enrollment White | Negro |
|---|---|---|---|
| Metcalf | K–3 | 489 | 275 |
| Duval | 4–6 | 386 | 250 |
| Lake Forest | K–4 | 340 | 283 |
| Prairie View | K–4 | 340 | 284 |
| Williams | 5–6 | 276 | 264 |

■ The record indicates that Duval and Metcalf, as stated, are in close proximity. It is both feasible and reasonable to pair them. Cf. Mannings v. Board of Public Instruction of Hillsborough County, 5 Cir., 1970, 427 F.2d 874, [1970]. This will eliminate Duval as an all Negro school.

■ The problem remains as to Williams. The record indicates that there are three white majority elementary schools contiguous to Williams. These are Kirby-Smith with a student assignment of 259 white and 175 Negro; Prairie View—471 white and 155 Negro; Lake Forest—502 white and 106 Negro. Williams can be, and it must be desegregated by either rezoning as amongst it and these other three schools, or by pairing Williams with one or more of these three schools. The district court is directed to give the option in the first instance to the school board as to the method to be selected but the school board must seek the advice of the bi-racial committee which is to be created. The end result will be that all schools in the system will be desegregated.

The district court is directed to see that a bi-racial committee of the type described in Ellis v. Orange County, supra, is established. The court is further directed to require that the bi-racial committee serve in an advisory capacity to the school board in the area of the promulgation and maintenance of zone lines, in pairing problems, and in school site location as well as in such other areas as may appear appropriate from time to time.

The A. Quinn Jones Elementary school and the Lincoln High school, formerly all Negro, are in the process of being converted into pupil development centers for students in need of compensatory or remedial training. Lincoln will also afford certain types of vocational training. The compensatory program is funded under Title I of the Elementary and Secondary Education Act of 1965, Public Law 89–10, 79 Stat. 27.

Appellants object to this activity on two grounds. First, it is urged that discontinuing Lincoln as a high school was an act of discrimination. The record does not sustain this charge on a facility basis nor on any other basis. There were ample educational reasons to discontinue Lincoln as a high school and to transfer its students to Gainesville High where the student body, as of February 24, 1970, was 2,263 white and 779 Negro.

The other objection to the change in status of these schools is that they are apt to remain as all Negro schools since the remedial or compensatory program is on a voluntary basis. As proof, it appears that the student body at A. Quinn Jones is presently 249 Negro and 34 white under the program. We cannot approve of this method of assignment.

■ The district court is directed to require that all assignments to these schools in the remedial sectors thereof be on objective and non-racial standards. Such a program is to be encouraged but the white children in need of such train-

ing must be assigned along with the Negro children in need of the training.

We do approve the operation of the vocational and technical training program at Lincoln on a voluntary basis subject to appellant's further objection once the program becomes operative. These needed programs should have the attention of the bi-racial committee before any further litigation ensues over them.

Affirmed in part; reversed in part with directions.

### ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.